UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER CHISOM,

     Plaintiff,

v.                                    CASE NO. 8:22-cv-1072-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for supplemental security income ("SSI"), filed on February 27, 2015, and alleging disability beginning June 14, 2013. [2] Following a September 1, 2021 remand from the Appeals Council[3] pursuant to a May 25, 2021 remand order by the United States

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 14, 19.)

[2] The earliest time that SSI benefits are payable is the month following the month in which the application was filed.  (*See* 20 C.F.R. § 416.335.)

[3] Pursuant to the remand order, the Administrative Law Judge ("ALJ") was directed to give further consideration to the opinion evidence pursuant to 20 C.F.R. § 416.927 and to Plaintiff's maximum residual functional capacity ("RFC"), obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base, and identify and resolve any conflicts between the occupational evidence provided by the VE and information in

District Court for the Middle District of Florida and a new administrative hearing held on February 1, 2022, ALJ Alderisio issued a decision on March 8, 2022, finding Plaintiff not disabled from June 14, 2013, through the date of the ALJ's decision.  (Tr. 749–68, 779–812, 880–81, 884–89.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d

---

the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations.  (Tr. 752, 886–88.)

1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

### A.    Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ failed to adequately address Plaintiff's subjective complaints of blurry vision and diplopia, caused by his multiple sclerosis ("MS").  (Doc. 20 at 6–8.) Plaintiff points to his testimony "that he experiences blurry vision and sees two dimension[s]."  (*Id.* at 7 (citing Tr. 805).)  Plaintiff also cites to an August 26, 2019 consultation with his neurologist, when he "advised that he has had episodes of diplopia, but was not having them at the time of the examination[,]" and to a June 2, 2019 emergency department record when he "advised that he had some intermittent left eye blurriness, among other symptoms."  (*Id.* (citing Tr. 1215, 1469).)  Plaintiff explains that "[i]t is commonly known that multiple sclerosis can lead to double vision[,]" and that "[i]t gets worse when the person experiences a relapse. . . [and] better when the flare-up passes."  (*Id.*)  Plaintiff contends that despite all of this evidence,

the ALJ never discussed Plaintiff's blurry and double vision, and that the error was significant "because two of the jobs identified by the [VE], involve frequent near acuity." (*Id*. at 8.)  Plaintiff argues that if he "could not perform tasks requiring frequent near acuity, intermittently, depending on how often this occurred, [he] may not have been able to perform the jobs identified by the [VE]." (*Id*.)

Second, Plaintiff argues that the VE's testimony did not constitute substantial evidence supporting the ALJ's decision because the ALJ's hypothetical question to the VE failed to accurately reflect all of Plaintiff's limitations.  (*Id*. at 8–11.)  Plaintiff makes two distinct arguments.  First, Plaintiff argues that the hypothetical question did not include limitations caused by Plaintiff's intermittent blurry and double vision.  (*Id*. at 9–10.)  Plaintiff explains that "[b]oth the jobs of router and price marker require frequent near acuity[,] . . . [and] [h]ad the [ALJ] included intermittent inability to perform tasks requiring near acuity due to blurry vision or double vision, the [VE] may have found that these jobs could not have been performed." (*Id*. at 10.)  Second, Plaintiff argues that "[t]he hypothetical to the [VE] also failed to include a limitation that [Plaintiff] could not stand or walk for extensive periods continuously" as opined by consultative examiner Joo Yang, M.D., whose opinion the ALJ assigned "great weight." (*Id*. (citing Tr. 766, 1608).)  Plaintiff argues that "[w]hile light work is defined in the

4

regulations as lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, it also can involve a good deal of walking or standing." (*Id.* (citing 20 C.F.R. § 416.967).)  Plaintiff explains:

> Although usually light work involves standing and walking approximately six hours out of an eight-hour workday (SSR 83-10), and sitting may occur intermittently during the remaining time, there are many light jobs that require standing and walking the entire workday, except for normal mid-morning, mid-afternoon, and lunch breaks.  If one looks at the job description of a housekeeper, there does not appear to be any activities that would allow the worker to sit intermittently for up to two hours out of an eight-hour workday.  It certainly appears that the individual performing this job would have to either stand or walk for extended periods continuously.

(*Id.* at 11.)  Plaintiff also contends that Dr. Yang's opinion that Plaintiff could not stand or walk for extended periods continuously was "too vague for the [ALJ] to know what the doctor meant."  (*Id.*)

Defendant responds that the ALJ properly considered Plaintiff's subjective complaints, and his assessment was supported by substantial evidence.  (Doc. 21.)  Defendant explains that "the relevant medical records, as discussed thoroughly by the ALJ, do not include objective medical findings or other evidence establishing that Plaintiff was as limited as he alleged."  (*Id.* at 8.)  In addition to the objective medical evidence, Defendant argues that "Plaintiff's activities, such as his ability 'to perform essentially all activities of daily living,' as noted by the ALJ, provide further evidence that

his condition was not as limiting as he alleged and was 'relatively

inconsistent with [Plaintiff's] allegations of total disability.'"  (*Id*. at 9 (citing

Tr. 764).)  Defendant further states:

> Here, the ALJ noted Plaintiff can perform personal care, prepares
> simple meals, cleans and does his laundry independently, rides a
> bicycle, shops in stores, pays bills, counts change, handles a
> savings account, plays sports, watches television, goes places
> along [sic], and exercises (Tr. 764, 466-71, 484-93, 738-40, 742-
> 47.  Further, the ALJ noted that Plaintiff worked after the
> alleged onset date, though not rising to the level of substantial
> gainful activity, providing further evidence that his condition was
> not as limiting as he claimed (Tr. 494-97, 754-55).

(*Id*.)  Defendant argues that "Plaintiff cites no medical opinions indicating his

blurriness or diplopia cause functional limitations in addition to those listed

in his RFC finding."  (*Id*. at 10.)  Accordingly, Defendant states that "Plaintiff

failed to meet his burden of providing sufficient evidence to support his

subjective complaints of disabling symptoms and limitations."  (*Id*. at 11.)

With respect to Plaintiff's second argument, Defendant responds that

"[s]ubstantial evidence supports the ALJ's assessment of Plaintiff's RFC, and

the ALJ's relevant hypothetical question to the VE included all the

limitations in the ALJ's RFC finding."  (*Id*. at 12 (citing Tr. 758).)

Accordingly, Defendant argues that the ALJ "properly relied on the VE's

testimony to find that Plaintiff could perform other work through the date of

his decision."  (*Id*. (citing (Tr. 767–68).)  Additionally, Defendant argues that

the ALJ properly evaluated Dr. Yang's opinion, and although the ALJ

afforded it significant weight, he was not required to adopt the opined limitations verbatim "because the ALJ had the responsibility of assessing Plaintiff's RFC based on all the relevant evidence." (*Id.* at 14.)

### B.    Standard for Evaluating Subjective Symptoms

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he [or she] must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his subjective symptom is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at

1561. *See also* SSR 16-3p[4] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

. . .

In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5] The determination

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning

or decision must contain specific reasons for the weight given to
the individual's symptoms, be consistent with and supported by
the evidence, and be clearly articulated so the individual and any
subsequent reviewer can assess how the adjudicator evaluated
the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not
assess an individual's overall character or truthfulness in the
manner typically used during an adversarial court litigation.  The
focus of the evaluation of an individual's symptoms should not be
to determine whether he or she is a truthful person.  Rather, our
adjudicators will focus on whether the evidence establishes a
medically determinable impairment that could reasonably be
expected to produce the individual's symptoms and given the
adjudicator's evaluation of the individual's symptoms, whether
the intensity and persistence of the symptoms limit the
individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms
and to follow treatment once it is prescribed" will also be considered "when
evaluating whether symptom intensity and persistence affect the ability to
perform work-related activities."  *Id.*  "[I]f the frequency or extent of the
treatment sought by an individual is not comparable with the degree of the
individual's subjective complaints, or if the individual fails to follow
prescribed treatment that might improve symptoms, [the adjudicator] may
find the alleged intensity and persistence of an individual's symptoms are

---

the claimant's functional limitations and restrictions due to pain or other
symptoms.  20 C.F.R. § 416.929(c)(3); SSR 16-3p.

inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;

- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;

- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;

- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;

- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;

- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### C.    Joo Yang, M.D.

On September 19, 2020, Dr. Yang conducted a consultative

10

examination of Plaintiff, as part of Plaintiff's Social Security disability claim. (Tr. 1603–09.)  Plaintiff reported, *inter alia*, no changes in vision, eye pain, discharge, or itching.  (Tr. 1603.)  Physical examination findings included a conjugate gaze, equal pupils reacting normally to light, full extraocular movements without nystagmus, normal conjunctiva without exudate, no scleral injection or jaundice, clear corneas and anterior chambers, and no cataracts.  (Tr. 1604.)  Plaintiff's back examination revealed no deformities, muscle spasm, or tenderness, with normal straight leg raising in seated and supine positions.  (Tr. 1605.)  Neuromuscular findings included 5/5 grip and upper extremities strength and 4/5 lower extremities strength, and normal dexterity, cranial nerves, Romberg, and sensory.  (Tr. 1605.)  Dr. Yang opined that Plaintiff was able to "[s]it, lift, carry, handle objects, speak, travel, understand, remember, concentrate, persist, interact socially, and adapt" but was limited in "[s]tand[ing] and walk[ing] for extended periods continuously due to musculoskeletal weakness and stiffness originating from multiple sclerosis."  (Tr. 1608.)

### D.   Plaintiff's Hearing Testimony

On February 1, 2022, Plaintiff appeared for a telephonic hearing before ALJ James Alderisio.  (Tr. 779–812.)  Plaintiff testified in part as follows:

Q What–why was it you couldn't work?

A Because that was my condition, and I was passing out in the

11

sun.  I passed out in the sun and passed out in the sun.  That was one of the reasons, too.  I was passing out because it was too hot. I was getting double vision. Yeah. And migraine headaches and stuff.

Q Do you still have that problem today?

A Yes. Yes, I do.

Q Okay. And what do the doctors tell you is the cause of that problem?

A Cause of what? My headaches and stuff?

Q Yeah.

A Because–it's because in the sun–being in the sun too much, migraine headaches and double–seeing double–two dimensions, seeing double vision.

. . .

Q . . . Now, the medical record indicates that some of the doctors think you have multiple sclerosis.  Do you–

A Yeah, I got multiple sclerosis.

Q –take any kind of medication for that?

A Yes, sir.

Q Do you take any medication?

A Yes sir.

Q And is it helpful?

A It's normal, but I still have my breakdowns and stuff occasionally, where I'm going to–

Q What do you mean a breakdown? So–

A Like, you know, when I have flare-ups and stuff.  I have flare-ups and bad stuff. I had to go to–back to St. Anthony's to get my–take my infusion, so I had to get hooked up to a–they had to put

IVs and stuff in my arm and stuff–

Q Okay. And that was–

A –at St. Anthony's.

Q –because of your MS?

A Yes.

. . .

Q . . .  And then, do you have episodes of slurred speech and loss of vision?

A Yes, ma'am.

Q What does the neurologist say about that? You know, do you know why it's happening?

A What? The loss of vision and blurred vision?

Q Um-hum.

A My condition–

Q Are they still trying to figure it out?

A No, I'm–my condition to the brain and my–

Q Yes.

A –condition. It cause me . . . to see blurry, see two dimension.

(Tr. 787–89, 805.)

### E.    The VE's Hearing Testimony

On February 1, 2022, VE Terrilyn Battle, appeared for a telephonic hearing before ALJ James Alderisio.  (Tr. 790–99.)  During the hypothetical questioning by the ALJ, the VE testified in relevant part as follows:

Q Suppose I had an individual that could work at the light level

13

that had the following restrictions.  There'd be no climbing of ladders, ropes or scaffolding.  There'd be no exposure to hazardous machinery.  There'd be occasional contact with the public, supervisors, and co-workers.  There'd be no production quotas that the individual would be part of a team assembling something or where there were time deadlines.  And the jobs–I'm going to say they'd be simple, routine, repetitive tasks.  Let's make it at the two-to[-]three-step level.  Is–would any of the past work be possible?

A No.

Q Okay.  Well, would there be other jobs that would be possible with those restrictions?

A Yes.  The hypothetical individual could perform work as a cleaner, housekeeper; DOT 323.687-014; . . . SVP 2; exertion level light.  There is approximately . . . 194,000 in the national number.  The hypothetical individual could perform work as a marker, DOT 209.587-034; SVP 2; exertion level light.  And there is approximately 131,000 in the national number.  And the hypothetical individual could perform work as a router; 222.587-038; SVP 2; exertion level light.  There's approximately 31,000 in the national number.

(Tr. 791–92.)

## F.    The ALJ's Decision

At step two of the sequential evaluation process, [6] the ALJ found that

Plaintiff had the following severe impairments: multiple sclerosis; headaches;

bipolar disorder; depression; adult antisocial behavior/intermittent explosive

disorder; cognitive disorder; learning disorder; and borderline intellectual

---

[6] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

14

functioning.  (Tr. 755.)  At step three, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments.  (*Id*.)

Then, before proceeding to step four, the ALJ determined that Plaintiff

had the RFC to perform light work with limitations, as follows:

> [Plaintiff] is never able to climb ladders, ropes, or scaffolds and
> have no exposure to hazardous machinery.  [Plaintiff] is able to
> have occasional contact with the public, supervisors, and
> coworkers, perform work with no production quotas or as part of
> a team with time deadlines, and perform jobs that are simple,
> routine, and repetitive tasks with 2-3 steps.

(Tr. 758.)

In making these findings, the ALJ discussed Plaintiff's complaints, the

medical evidence, and the medical opinions of record.  (Tr. 758–67.)  The ALJ

discussed Plaintiff's complaints as follows:

> In his initial application for disability, [Plaintiff] alleged that he
> is unable to work secondary to multiple sclerosis (Ex. B1E, B7E,
> B9E, B12E).  Due to this issue, [Plaintiff] alleged that he had
> body pain and migraines that causes [sic] difficulty standing in
> the heat and instability while walking.  He reported that he is
> able to lift 20 pounds and walk for a ¼ to ½ mile.  Although
> [Plaintiff] did not allege having any psychological issues, he
> alleged that he has some difficulty getting along with others due
> to aggravation and has difficulty completing tasks, paying
> attention, following spoken instructions, and managing stress
> and changes in routine (Ex. B3E, B6E, B10E).  At the first
> hearing in February 2019, [Plaintiff] testified that he was
> disabled due to multiple sclerosis that caused back and head pain
> and also caused difficulty walking due to instability.  However,
> he acknowledged that he may be able to do a job that was
> primarily sitting.  Mentally, he testified that he had some past

anxiety that no longer bothered him.  He also testified that he was not mentally "slow" and was able to graduate from high school (Testimony, February 1, 2019).  At the second and instant hearing, [Plaintiff] testified that he was laid off from his prior job doing landscaping because of problems associated with working in the sun, like passing out and headaches.  He further testified that he continues to require infusions for multiple sclerosis every six months and also takes medications for anxiety and depression (Testimony).

(Tr. 758.)

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 759.)

In so finding the ALJ considered the medical evidence, noting:

The medical evidence, discussed above, shows that [Plaintiff] was diagnosed with multiple sclerosis a few years prior to the alleged onset date and stopped treatment prior to the alleged onset date. Nonetheless, the medical evidence between the alleged onset date and mid-2016 confirms that [Plaintiff] received very little treatment, reported doing well overall other than some intermittent baseline weakness on his non-dominant right side, and demonstrated largely intact function on examinations with full range of motion, strength, and sensation, intact neurologic function, intact gait, ambulation, and coordination, and no gross motor dysfunction.  Around June 2016, [Plaintiff] had a multiple sclerosis exacerbation with lower extremity weakness and abnormal gait; however, all of [his] function remained within normal limits and [Plaintiff's] condition improved quickly and significantly with conservative steroid treatment.  Thereafter, neurology notes confirm that [Plaintiff] recovered from this exacerbation.  Moreover, it appears that he was doing well overall

16

with conservative[,] twice yearly infusions with only some intermittent and modest symptoms of slurred speech, extremity weakness, and abnormal gait.  To that end, [Plaintiff] received very little treatment and the treatment that he did receive confirmed mostly unremarkable function.  Indeed, the only notable abnormality on examination occurred in late 2021 when [Plaintiff] reported more frequent falls and poor balance and requested a gait aid; however, he did not follow up as recommended or receive any further treatment, which suggests that these symptoms were not significant or persistent enough to prompt compliance.  Thus, overall, the medical evidence confirms that [Plaintiff] received some sporadic treatment for multiple sclerosis that caused only some intermittent extremity weakness and gait abnormality when untreated and was well controlled with medications.  Accordingly, the medical evidence does not support [Plaintiff's] allegations of disabling physical symptoms and limitations.

(Tr. 763.)  The ALJ also considered Plaintiff's activities of daily living, noting:

[Plaintiff] reported that he is able to perform essentially all activities of daily living, like live along with his younger brother, perform personal care, prepare simple meals, clean and do laundry without encouragement, ride a bicycle, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money order, play sports, watch television, go places and care for himself without reminders, go places alone, and exercise (Ex. B3E, B6E, B8F, B9F), which is relatively inconsistent with [Plaintiff's] allegations of total disability.

(Tr. 764.)

The ALJ then addressed medical opinions, including that of consultative physician Dr. Yang, and prior administrative medical findings. The ALJ assigned "significant weight" to the prior administrative medical findings explaining:

As for the opinion evidence, the undersigned gives significant

17

weight to the assessments of the State agency medical consultants that [Plaintiff] is able to perform work at the medium level with no climbing ladders, ropes, or scaffolds due to balance issues (Ex[s]. B6A, B12A, B15A). The consultants provided good support for their assessments with discussions of the evidence that they relied upon, which provide significant probative value. These assessments are also generally consistent with the record as a whole, which confirms that [Plaintiff] has reported intermittent lower extremity weakness and gait disturbance due to imbalance because of multiple sclerosis and has demonstrated intermittent weakness and gait disturbance on examinations. it [sic] is also consistent with the other objective medical evidence showing that [Plaintiff] has not used or required any type of assistive device for ambulation during treatment and has maintained intact sensation, range of motion, strength and motor function on the vast majority of examinations. Moreover, it is generally consistent with the assessment of Dr. Yang that [Plaintiff] should avoid extended periods of continuously standing and walking due to leg weakness and stiffness, to which the undersigned also affords significant weight, as discussed below. Thus, the undersigned affords these assessments significant weight and deviates only to further reduce [Plaintiff's] ability to perform exertional activities to the light exertion level.

(Tr. 765.) The ALJ also afforded "significant weight" to Dr. Yang's medical opinion. The ALJ discussed Dr. Yang's opinion as follows:

After physical consultative evaluation, Dr. Yang opined that [Plaintiff] would be able to perform all physical and mental work functions except for standing and walking for "extended periods continuously" due to musculoskeletal weakness and stiffness originating from multiple sclerosis (Ex. B22F). The undersigned affords this significant weight as it is internally well supported by Dr. Yang's own clinical observations, interview, and examination of [Plaintiff], which confirmed essentially unremarkable function on physical examination other than some modest lower extremity weakness and abnormal gait and walking. It is also consistent with the other evidence of record that also shows that [Plaintiff] reported issues with his lower extremity and gait and demonstrated intermittent strength

18

> reductions and gait abnormalities.  Thus, the undersigned affords
> this weight in determining that [Plaintiff] is only able to perform
> work at the light exertion level.

(Tr. 766.)  The ALJ concluded that his RFC assessment was "supported by

the assessments and opinions, the objective medical evidence, and the other

non-medical evidence, including [Plaintiff's] statements."  (Tr. 767.)

Then, at step five of the sequential evaluation process, based on the

testimony of the VE and considering Plaintiff's age, education, work

experience, and RFC, the ALJ found that there were jobs existing in

significant numbers in the national economy that Plaintiff could perform,

such as cleaner, housekeeper (DOT No. 323.687-014), marker (DOT No.

209.587-034), and router (DOT No. 222.587-038).  (Tr. 767–68.)  Therefore,

the ALJ concluded that Plaintiff had not been under a disability from June

14, 2013, through the date of the ALJ's decision.  (Tr. 768.)

## G.    Analysis

The ALJ is required to consider all the evidence in the record when

making a disability determination.  *See* 20 C.F.R. § 416.920(a)(3).  With

regard to medical opinion evidence, "the ALJ must state with particularity

the weight given to different medical opinions and the reasons therefor."

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "[T]he

ALJ may reject any medical opinion if the evidence supports a contrary

finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL

708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

However, Eleventh Circuit law is clear that an ALJ cannot reject portions of a medical opinion without providing a reasoned explanation for doing so. *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). Accordingly, in the Eleventh Circuit, when an ALJ assigns great (or significant) weight to a medical opinion, he is required to adopt the limitations contained in the opinion or explain why he is discounting certain limitations. *See Watkins v. Comm'r of Social Security*, 457 F. App'x. 868, 871–72 (11th Cir. 2012) (finding that the ALJ erred when he "gave great weight to Dr. Feussner's RFC evaluation" but failed to incorporate the physician's "sit/stand limitation into his RFC finding or to give a reason for not doing so"); *see also Rosario v. Comm'r of Social Security*, No. 6:12-cv-1687-Orl- GJK, 2014 WL 667797, at *3 (M.D. Fla. February 20, 2014) (citations omitted) ("Having given significant weight to Dr. Bartlett's opinion, the ALJ should have provided a reasoned explanation as to why she did not include or otherwise account for [the limitation found by the physician] in her RFC determination or in her hypothetical questions to the VE.").

Here, the ALJ acknowledged Dr. Yang's observation "that [Plaintiff] would be able to perform all physical and mental work functions except for standing and walking for 'extended periods continuously' due to

20

musculoskeletal weakness and stiffness originating from multiple sclerosis." (Tr. 766.)  Even though the ALJ wrote that he gave significant weight to Dr. Yang's opinions, he did not account for Dr. Yang's opinion regarding Plaintiff's limitation in walking or standing for 'extended periods continuously[7],' in the RFC finding or hypothetical to the vocational witness. (*See* Tr. 758, 766, 790-799.)  Nor did the ALJ explain why he gave no weight to that opinion, if in fact he determined that it was deserving of no weight. (*See* Tr. 766.)  Such cherry-picking from the limitations identified by a particular doctor—without adequate explanation—is forbidden. *See e.g., Williams v. Saul*, No. 5:18-cv-01464-GMB, 2020 WL 733815, at *14 (N.D. Ala. Feb. 13, 2020) (reasoning that "cherry-picking is forbidden" when an ALJ is assessing the record).

Moreover, it is not clear what impact this limitation, if included in the RFC, would have had on Plaintiff's ability to perform other work in the national economy.  Plaintiff makes a cogent argument in this regard:

> Although usually light work involves standing and walking approximately six hours out of an eight-hour workday (SSR 83-10), and sitting may occur intermittently during the remaining time, there are many light jobs that require standing and walking the entire workday, except for normal mid-morning, mid-afternoon, and lunch breaks. If one looks at the job description of a housekeeper, there does not appear to be any activities that would allow the worker to sit intermittently for up to two hours

---

[7] Notably, the light exertion level can require a "good deal of walking or standing." *See* SSR 83–10, 1983 WL 31251 (S.S.A.).

> out of an eight-hour workday. It certainly appears that the
> individual performing this job would have to either stand or walk
> for extended periods continuously.

(Doc. 20 at 11.)  Therefore, the Court finds that the error is not harmless. *See,*

*e.g., Pabon v. Comm'r of Soc. Sec.*, No. 6:15-cv-534-ORL-GJK, 2016 WL

2927607, at *3 (M.D. Fla. May 19, 2016) (finding that the ALJ's apparent

rejection of lifting limitations without explanation was not harmless where it

was "unclear what impact the inclusion of the lifting impairments . . . would

have on [Plaintiff's] ability to perform other work in the national economy").

Ultimately, the ALJ erred, and substantial evidence does not support his

RFC determination.  *See, e.g., Kenneth S. v. Comm'r of Soc. Sec.*, No. 1:18-cv-

2327-JFK, 2019 WL 3934800 at *5, (N.D. Ga. Aug. 19, 2019) (finding that the

ALJ committed reversible error by giving great weight to consultative

examiner's opinions but then failed to include them in the RFC or explain

why he did not include them).

   In light of the above, the Court need not address Plaintiff's other

challenges.  *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d

882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's

remaining arguments due to the conclusions reached in remanding the case;

*Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam)

(stating that where remand is required, it may be unnecessary to review

other claims raised) (citations omitted).  On remand, however, the ALJ must

reconsider the opinions of Dr. Yang as part of the RFC.  The ALJ must also review Plaintiff's subjective complaints regarding blurry vision and diplopia and conduct any further proceeding deemed appropriate.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reconsider the opinions of Dr. Yang as part of the RFC, review Plaintiff's subjective complaints regarding blurry vision and diplopia, and conduct any further proceeding deemed appropriate.

2.     The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.     The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) and/or 42 U.S.C. § 1383(d)(2) must be filed within fourteen (14) days from plaintiff's counsel's receipt of any "close-out" letter.  The motion must include the agency letter stating the amount of past-due benefits withheld, include any applicable contingency fee agreement, and establish the fee is reasonable for the services rendered.  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §

2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 5, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record